UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DARRELL H.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C18-1811 MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in evaluating medical opinion evidence; formulating the residual functional capacity ("RFC"); evaluating Plaintiff's symptom testimony; and relying on vocational expert ("VE") testimony. (Dkt. # 11.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.    BACKGROUND

Plaintiff was born in 1966, has a GED, and has worked as an auto technician and laborer. AR at 224, 248. Plaintiff was last gainfully employed in 2011. *Id.* at 223.

ORDER - 1

On May 15, 2015, Plaintiff applied for benefits, alleging disability as of December 31, 2011.[1] AR at 198-210. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 59, 78, 146-48. After the ALJ conducted a hearing on October 24, 2017, the ALJ issued a decision finding Plaintiff not disabled. AR at 15-23.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since December 31, 2011.

Step two: Plaintiff has the following severe impairments: left shoulder degenerative joint disease; right thumb degenerative joint disease; left hand carpal tunnel syndrome (20 CFR 404.1520(c) and 416.920(c)).

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

Residual Functional Capacity: Plaintiff can perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can lift/carry and push/pull ten pounds frequently and occasionally. With the dominant right hand he can occasionally do handling and fingering. With the left hand he can frequently do handling and fingering. With the left upper extremity he can do no overhead reaching, and can occasionally reach at or below shoulder level. He can occasionally crawl. He can do no climbing of ropes, ladders and scaffolds. He is capable of engaging in unskilled, repetitive, routine tasks in two-hour increments.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 15-23.

---

[1] Plaintiff initially alleged an onset date of December 31, 2011. AR at 219. At the hearing, Plaintiff's counsel requested to amend the alleged onset date to May 15, 2015 because there were no medical records dating back to 2011. *Id.* at 31-32. As discussed below, the ALJ did not make a ruling on Plaintiff's request, and instead uses both dates in different parts of his decision.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER - 2

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 11.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Err in Evaluating Plaintiff's Symptom Testimony

#### *1. Legal Standards for Evaluating Plaintiff's Testimony*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and

effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

                    2.      *The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Testimony*

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence in the record. AR at 18. Specifically, the ALJ found Plaintiff's allegations of impairments were not consistent with Plaintiff's self-reported daily activities, the medical records, and medical improvements. *Id.* at 18-20.

                              *a.*      *Activities of Daily Living*

The ALJ found Plaintiff's allegations of disability were inconsistent with his self-reported activities. During a clinic visit, Plaintiff reported he was very sexually active. AR at 763. Specifically, the clinic visit notes show Plaintiff reported having sex "multiple times a day every day." *Id.* In fact, the record shows Plaintiff sought medical treatment on multiple occasions for genital pain resulting from the frequency of his sexual activity. *See e.g., id.* at 747, 753, 775, 792. The ALJ also cited to medical records in which Plaintiff reported he had an "active lifestyle" with his children. AR at 768. Plaintiff testified that in addition to taking his children to school every day, he has them every weekend, attends their sporting events, drives them around, and cooks for them. *Id.* at 32-33, 36, 41, 45. Plaintiff also reported in a Function Report that is able to perform light duties. *Id.* at 242.

Plaintiff's arguments that the ALJ inappropriately listed Plaintiff's activities of daily living without more, is unpersuasive. (Dkt. # 11 at 9-12.) Plaintiff alleged he cannot reach, lift, carry, or grasp with a firm grip (AR at 241), and his testimony further elaborated on these alleged limitations. *See e.g.*, *id.* at 39 (stating he cannot lift or pick things up over this head), 40

(stating he cannot "really hold any pounds at all" and "really can't grip"), 44 (stating he cannot grasp or open jars), 47 (stating he "may carry a sweatshirt or a coat in [his] left hand…that's about it"), 41 and 48 (stating a gallon of milk is too heavy for him to carry). The ALJ could reasonably discount Plaintiff subjective symptom testimony because his activities of daily living contradicted his testimony. *See Orn*, 495 F.3d at 639. Further, the ALJ was not required to establish Plaintiff's activities would be transferable to basic work activities as argued by Plaintiff. *Id.* (activities may undermine credibility where they (1) contradict the claimant's testimony *or* (2) "meet the threshold for transferable work skills") Accordingly, the inconsistencies between Plaintiff's testimony concerning his limitations and his activities of daily living were clear and convincing reasons for discounting his testimony.[4]

### b. *Inconsistencies with the Medical Record*

As discussed above, Plaintiff alleges his impairments are so severe that they prohibit him from, *inter alia*, reaching, lifting, and carrying. However, the ALJ noted that while the medical record reflects Plaintiff has some limitations, he retains the capacity for "light" work with additional limitations. AR at 19. The ALJ cited to Dr. Wallace's February 2017 exam notes which show Plaintiff had only some tenderness in his cervical spine, thoracic spine, and lumbar spine, and that his range of motion was only "mildly reduced." *Id.* at 749. Dr. Wallace's notes also state that his shoulder had "tenderness." *Id.* The ALJ also noted that despite sustaining a fall

---

[4] The ALJ also cited to a medical record which indicated Plaintiff did wall jumping jacks for one minute twice a day, however, this exercise was listed under Plaintiff's "patient plan" rather than as a report of Plaintiff's actually daily exercises. AR at 746. The ALJ also noted that Plaintiff testified he could have continued performing his prior job as a temporary shipping and receiving clerk had they hired him permanently rather than hiring someone else. *Id.* at 38. The Court notes Plaintiff later clarified his testimony and stated he would not be able to do his prior job now due to his shoulder replacement. *Id.* at 49-50. These errors are harmless given the other clear and convincing reasons provided by the ALJ. *See Carmickle*, 533 F.3d at 1162-63.

in May 2017[5], Dr. Sciarrone's notes from June 2, 2017 state Plaintiff's cervical spine, lumbar spine, shoulders, and hands were normal. *Id.* at 744. The ALJ noted that ten days later, Dr. Jabeen found Plaintiff's thoracic spine had only "mildly reduced" range of motion. *Id.* at 740.[6]

The ALJ acknowledged that radiological results confirmed Plaintiff had severe impairments in his neck, shoulder, and thumb, but found the degree of severity not reasonably disabling in light of physical exams, discussed above, showing Plaintiff's functioning was not severely reduced. AR at 19. Inconsistencies between Plaintiff's allegations and the medical record was a sufficient reason to discount Plaintiff's subjective symptom testimony. Accordingly, the ALJ provided a clear and convincing reasons to discount Plaintiff's subjective symptom testimony.

### c. *Medical Improvements*

Lastly, the ALJ noted a treatment letter from August 2017 from Plaintiff's chiropractor which states Plaintiff "demonstrated significant improvement" compared to an earlier examination immediately following a motor vehicle accident. AR at 855. Improvement with treatment is a clear and convincing reason to discount symptom testimony. Impairments that can be effectively controlled by treatment are not considered disabling for purposes of Social Security benefits. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, the ALJ noted Dr. Igieiski's 2017 letter stating Plaintiff's impairments had significantly improved. Plaintiff does not challenge the ALJ's treatment of Dr. Igieiski's opinion.

---

[5] The ALJ stated the fall occurred in June 2017, however, records show it occurred on May 25, 2017. AR at 742.

[6] The ALJ also cited to Dr. Cheung's September 2016 exam notes again, stating they were from shortly after Plaintiff's shoulder surgery AR at 19, 506. As discussed below, this was error, however, it was harmless given the other clear and convincing reasons provided by the ALJ. *See Carmickle*, 533 F.3d at 1162-63.

Accordingly, the ALJ provided several clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony. This portion of the ALJ's decision is affirmed.

**B.     The ALJ Erred in Evaluating the Medical Opinion Evidence**

*1.     Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and

convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. Mark Peterson, M.D.

Dr. Peterson conducted a Department of Social and Health Services ("DSHS") Physical Functional Evaluation of Plaintiff in October 2014. AR at 466-68. Dr. Peterson opined Plaintiff was unable to use his right hand for any type of grasping activities, unable to lift his left arm beyond approximately twenty degrees below his shoulder height, had severe impairments, and was limited to sedentary work. *Id.*

The ALJ gave Dr. Peterson's opinion little weight. AR at 20. In reaching this conclusion, the ALJ found it significant that his opinion predated Plaintiff's "alleged onset date" by seven months. *Id.* The ALJ also cited to subsequent physical exams which showed less severe impairments than those opined by Dr. Peterson. *Id.* Specifically, the ALJ cited Dr. Wallace's February 2017 notes that state Plaintiff's shoulder pain occurred occasionally and was relieved

by over-the-counter medication. *Id.* at 747. The ALJ also cited Dr. Cheung's September 2016 exam notes, which state Plaintiff's shoulder had "active forward elevation to 100° and passive forward evaluation to 140°" and that "[p]alpation produce[d] diffuse tenderness about the shoulder." *Id.* at 506. The ALJ asserted that Dr. Cheung's September 2016 exam occurred after Plaintiff's left shoulder surgery in 2016. *Id.* at 20.

Plaintiff argues the ALJ erred by failing to give Dr. Peterson's opinion "great, if not controlling weight" as a treating provider, and instead giving State agency consultant Dr. Irwin's opinion significant weight. (Dkt. # 11 at 5). The Court notes the ALJ was not required to give Dr. Peterson's opinion greater weight over Dr. Irwin's opinion simply because he was a treating physician. *Thomas,* 278 F.3d at 957; *Orn,* 495 F.3d at 632–33. Regardless, the Court agrees the ALJ erred in evaluating Dr. Peterson's medical opinion.

The ALJ identifies the alleged onset date as December 31, 2011 in both the procedural history section of his decision and at his Step Two finding, and there is no mention of Plaintiff's request to amend that date during the hearing. AR at 15, 17. However, the ALJ seems to apply Plaintiff's requested amended date of May 15, 2015 when evaluating the medical opinion evidence, as he states Dr. Peterson's 2014 opinion predated the alleged onset date by seven months. AR at 20. Because of this inconsistency, the Court cannot be confident that the ALJ granted Plaintiff's request to amend his alleged onset. If the ALJ did not grant the request, Dr. Peterson's opinion would not predate the alleged onset date, and therefore the ALJ's finding that the opinion predated the alleged onset date would not be a legally sufficient reason to discount his opinion. On remand, the ALJ should explicitly rule on Plaintiff's request to amend his alleged onset date to May 15, 2015, and discuss his ruling in the written decision.

Another reason the ALJ discounted Dr. Peterson's opinion is Dr. Cheung's September 2016 exam notes showing less severe limitations (AR at 506), which the ALJ asserts are from after Plaintiff's left shoulder surgery. *Id.* at 20-21. After reviewing these notes, however, it appears they are from an exam that occurred on the morning of Plaintiff's shoulder surgery, *prior* to the actual surgery. *Id.* at 506. Therefore, the ALJ erred in his evaluation of these notes, which he relies on numerous times throughout his written decision as evidence of improvement.

The last reason provided by the ALJ for discounting Dr. Peterson's opinion is the exam results from Dr. Wallace, a naturopathic doctor. In certain circumstances, an opinion from an other medical source may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. SSR 06–03P. Here, the ALJ merely gave Dr. Wallace's medical findings from February 2017 "some weight." The Court concludes the findings from this other medical source, without more, is an insufficient reason to reject Dr. Peterson's opinion, especially in light of the fact the ALJ failed to articulate what portions of Dr. Wallace's findings he was accepting and rejecting, as discussed below.

Accordingly, this case must be remanded for further administrative proceedings. The ALJ should clarify the alleged onset date and reevaluate Dr. Peterson's October 2014 opinion. In addition, the ALJ should reexamine Dr. Cheung's September 2016 notes and his reliance on them regarding Plaintiff's functionality and improvement after surgery. Further, the ALJ should better articulate why he accords more weigh to Dr. Wallace's other medical source findings than to treating physician Dr. Peterson's opinion.

   *3. Ada Cheung, M.D.*

Dr. Cheung conducted a DSHS Physical Functional Evaluation in August 2016. AR 469-73. Dr. Cheung opined Plaintiff had severe traumatic arthropathy in his left shoulder and was

severely limited and unable to meet the demands of sedentary work. *Id.* The ALJ gave Dr. Cheung's August 2016 opinion only some weight. *Id.* at 21. Specifically, the ALJ found the opinion was rendered just one month before Plaintiff's shoulder surgery. *Id.* at 20-21. The ALJ also again cited to Dr. Cheung's September 2016 exam notes (*id.* at 506), again erroneously asserting they were from a post-surgery exam. *Id.*

Dr. Cheung also provided a medical source statement in April 2016. AR at 489-95. In that statement, Dr. Cheung opined that Plaintiff could lift up to ten pounds occasionally. *Id.* at 489. Dr. Cheung also opined Plaintiff could sit, stand, and walk for eight hours at a time, and in total, in an eight-hour day. *Id.* at 490. The ALJ gave Dr. Cheung's April 2016 opinion substantial weight, asserting it was consistent with Dr. Cheung's subsequent physical exam in September 2016. *Id.* at 21. The ALJ also found it was consistent with Plaintiff's self-reported activities, including his statements that he could do laundry, ironing, cleaning, and daily cooking. *Id.* at 21.

With respect to both opinions, the ALJ relied heavily on Dr. Cheung's September 2016 exam notes to say Plaintiff's functioning improved after surgery. As discussed above, the notes are from prior to surgery and therefore the ALJ erred in relying on them as evidence that Plaintiff's impairments improved after surgery. While the ALJ's finding that Dr. Cheung's April 2016 opinion was consistent with Plaintiff's activities could be a valid reason to give only some weight to Dr. Cheung's opinion, the ALJ needs to reevaluate both the April and August 2016 opinions in light of his erroneous reliance on the September 2016 exam notes.

    4. *James Irwin, M.D.*

State agency consultant Dr. Irwin provided a Disability Determination Explanation in January 2016. AR at 83-85. Based on Plaintiff's osteoarthritis of his thumb and degenerative joint disease of his left shoulder, Dr. Irwin opined that Plaintiff could perform light work. *Id.* at

85. The ALJ gave Dr. Irwin's opinion significant weight because it was "consistent with the totality of the medical records, including the claimant's self-reported activities and consistency of evidence on record." *Id.* at 21.

Plaintiff argues the ALJ erred in giving Dr. Irwin's opinion significant weight because he did not have the opportunity to examine Plaintiff or to review two of Dr. Cheung's opinions. (Dkt. # 11 at 5.) Although Dr. Irwin did not review all of the records in this case, the ALJ had the opportunity to review the entire record (AR at 15) and determined that his opinion was consistent with the record. AR at 21. However, relying on conclusory terms such as consistency with the "totality of the medical records" and consistency with the "evidence on record" are too vague. Because the Court is remanding this matter for further administrative proceedings, the ALJ should also reevaluate Dr. Irwin's opinion and better articulate his reasons for either adopting or rejecting the opinion.

          5.       *James Williams, M.D.*

Dr. Williams treated Plaintiff after his right thumb reconstruction surgery in June 2015. AR at 407. Dr. Williams noted Plaintiff's right hand and thumb were still sore from surgery but were "better." *Id.* at 413. Dr. Williams also noted Plaintiff's neck, lumbar spine, and lumbar/sacral spine were within normal limits. *Id.* at 420. Although the ALJ gave "some weight" to Dr. Williams' medical findings, it is not clear from the decision what weight was given to which portions of his findings, or which portions the ALJ rejected. *Id.* at 19-20. On remand, the ALJ should reevaluate Dr. Williams' findings and better articulate what weight he affords to which parts of the findings.

### *6. Other Source Opinion of Mason Wallace, ND*

Pursuant to federal regulations, a medical opinion from an "other" medical source must be considered. *See* 20 C.F.R. § 404.1513(d) (effective Sept. 3, 2013 to Mar. 26, 2017); *see also Turner v. Comm'r*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing 20 C.F.R. § 404.1513(a), (d)); SSR 06-3p, 2006 WL 2329939. "Other" medical source testimony, which the Ninth Circuit treats as lay witness testimony, "is competent evidence an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Turner*, 613 F.3d at 1224. In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted. *Lewis*, 236 F.3d at 512.

In a physical exam in February 2017, Dr. Wallace found Plaintiff negative for decreased mobility, joint swelling, numbness, spasms, swelling and tingling in the arms, and weakness. AR at 747. Dr. Wallace noted Plaintiff experienced pain but documented that it was achy and relieved by over the counter medicine. *Id.* Similar to the evaluation of Dr. Williams' findings, the ALJ gave "some weight" to Dr. Wallace's medical findings but it is unclear what weight was given to which portions of his findings, or which portions of the findings were rejected. *Id.* at 19-20. On remand, the ALJ should reevaluate Dr. Wallace's findings and better articulate what weight he affords to each part of the findings.

### C. RFC Determination

The ALJ found Plaintiff could perform "light work as defined by 20 CFR 404.1567(b) and 416.967(b) lift/carry and push/pull 10 lbs. frequently and occasionally." AR at 18. Plaintiff argues the ALJ's RFC was erroneous because pursuant to 20 CFR 404.1567(b) and 416.967(b), "light work" requires an individual to be able to lift up to twenty pounds on an occasional basis

with frequent lifting or carrying of objects up to ten pounds. (Dkt. # 11 at 8.) Plaintiff further argues the limitation of lifting no more than ten pounds is more consistent with sedentary work. (*Id.*)

While Social Security regulations define light work as involving lifting no more than twenty pounds, with frequent lifting and carrying up to ten pounds, they also clarify: "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b). *See also* SSR 83–14 ("The major difference between sedentary and light work is that most light jobs—particularly those at the unskilled level of complexity—require a person to be standing or walking most of the workday.") and SSR 83–10 ("Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work[.]").

Here, the ALJ did not find Plaintiff capable of a full range of light work. 20 C.F.R. 404.1567(b); *see also* SSR 83–10. The ALJ found Plaintiff capable of the full range of standing and walking but limited to lifting and carrying less than is required for a full range of light work. AR at 18. Plaintiff's argument that the ALJ was required to find Plaintiff could only perform sedentary work because of his lifting limitation would imply that ALJs are required to strictly adhere to the exertional definitions in determining plaintiff's RFC. This would make for less precise RFC determinations and ignore the common situation where a plaintiff's functional ability may fall between two exertional categories. In determining Plaintiff's RFC, the ALJ was

1  required to make a function-by-function analysis in assessing Plaintiff's RFC, which he did.

2  When RFC findings and final determination reflect a rational interpretation of the evidence, the

3  court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel,* 180 F.3d

4  1094, 1097 (9th Cir. 1999).

However, as discussed above, this matter is being remanded, in part, for the ALJ to reevaluate Dr. Peterson's October 2014 opinion, Dr. Cheung's April 2016 opinion, Dr. Irwin's opinion, Dr. Williams' findings, and Dr. Wallace's findings. On remand, the ALJ should also reevaluate the RFC, if necessary, in light of the Commissioner's reevaluation of the medical evidence.

### D. The ALJ Erred at Step Five

In determining whether a claimant is disabled, an ALJ may consult various sources, including the DOT and a VE. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017). "Presumably, the opinion of the VE would comport with the DOT's guidance." *Id.* If, however, the VE's opinion that the claimant can work "conflicts with, or seems to conflict with, the requirements listed in the [DOT]," the ALJ has an obligation to ask the VE to reconcile the conflict before relying on the VE's testimony. *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing SSR 00-4p, 2000 WL 1898704, at *2 (2000)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). The ALJ's obligation to reconcile a conflict is triggered only where the conflict is "obvious or apparent." *Gutierrez*, 844 F.3d at 808. The Court's inquiry in a case with an alleged DOT and VE conflict has two steps: First, was there a conflict between the VE's testimony and the DOT that the ALJ was obligated to reconcile? *See id.* Second, if there was a conflict, did the ALJ properly reconcile that conflict? *See Lamear*, 865 F.3d at 1205-06; *see also Massachi*, 486 F.3d at 1153-54

Here, the ALJ asked the VE to consider a hypothetical individual who, in relevant part, has a "maximum physical exertional capability" that is light, and who "is capable of lifting and carrying up to 10 pounds occasionally and 10 pounds frequently; who is capable of pushing and pulling up to ten pounds frequently and ten pounds occasionally." AR at 54. Thereafter, the VE testified the hypothetical individual could perform the representative light work occupations of furniture rental clerk, merchandise marker, and storage clerk. *Id.* 54-55. As discussed above, to perform "light work," an individual must be able to lift up to twenty pounds on an occasional basis with frequent lifting or carrying of objects up to ten pounds. 20 CFR 404.1567(b) and 416.967(b). Thus, there was an apparent conflict between the DOT's lifting requirements and the VE's testimony.

During the hearing, the ALJ did not affirmatively ask the VE if his testimony was consistent with the DOT. Rather, the ALJ stated, "I'm asking you to use your knowledge, skill and experience about jobs that may have a 10-pound lifting requirement." AR at 54. Plaintiff's attorney subsequently asked the VE, "if the DOT identifies the light duty jobs as lifting and carrying up to 20 pounds occasionally, the just so I'm clear, it's your expertise that these, that you're relying upon, that these three jobs can actually be done lifting and carrying only 10 pounds, is that accurate?" to which the VE responded "[t]hat is correct." *Id.* at 56.

Although Plaintiff's attorney elicited an explanation for the conflict between the VE's testimony and the DOT, the ALJ has an affirmative responsibility to ask about any possible conflicts. The ALJ's failure to do so was error. The ALJ further erred by failing to acknowledge this conflict and explaining how he resolved it in his decision. The ALJ's written decision inaccurately provides that the VE's testimony was consistent with the DOT, and includes no further discussion. AR 23.

Accordingly, on remand, the ALJ shall solicit the testimony of a VE and affirmatively ask if the VE's testimony conflicts with the DOT. If there is a conflict, the ALJ shall discuss the conflict and his resolution of it in the written decision.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should: (1) rule on Plaintiff's request to amend his alleged onset date; (2) reevaluate Dr. Peterson's October 2014 opinion, Dr. Cheung's opinions, Dr. Irwin's opinion, Dr. Williams' findings, and Dr. Wallace's findings; (4) reevaluate the RFC, if necessary; and (5) upon questioning a VE, affirmatively ask if the testimony conflicts with the DOT and, if so, address the resolution of any such conflicts in his decision.

Dated this 1st day of July, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 18